D. H. ARMSTRONG, Respondent, *v.* CITY OF ST. LOUIS *et al.*, Appellants.

### December 7, 1876.

1. The limitation imposed upon the mayor and Council of the city of St. Louis, by the 5th subdivision of section 1, article 3, of the Charter of 1870, was not affected by the reënactment in the amendments passed in 1874. Sess. Acts, 1874, p. 368.

2. A city may be enjoined and restrained from establishing a grade and doing work upon a street, if the proposed grade and doing work would not be beneficial to the public, but would render the street impassable, and the place to which it leads inaccessible.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

*E. T. Farish,* for appellants, cited: Laws 1874, p. 363; Ang. on Highw., sec. 138; Goszler *v.* Georgetown, 6 Wheat. 593; Schattner *v.* Kansas, etc., 53 Mo. 162; 2 Dill. on Mun. Corp., secs. 542, 543, 783.

*Reese & Hicks,* for respondent, cited: Price *v.* Thompson, 48 Mo. 611; Dill. on Mun. Corp., secs. 255, 263, 521,

522, 543; Kerr on Inj. 333; Milham *v.* Sharp, 27 N. Y. 625; 2 Story's Eq. Jur., secs. 923, 924; 4 Steph. Com. 294; Ang. on Highw., secs. 222, 226, 283; 5 Green, 530; Imler *v.* Springfield, 55 Mo. 119; Acts 1870, p. 479; Wag. Stat. 1032, sec. 24; City of St. Louis *v.* Weber, 44 Mo. 547; Hill. on Inj. 301, 312; Bouv. L. Dic., title Street; 3 Kent's Com. 432; Rex *v.* Marquis, 4 Ad. & E. 713; 4 Serg. & R. 106.

GANTT, P. J., delivered the opinion of the court.

Armstrong asked for an injunction against the city, its engineer and contractors, on the following grounds, viz.: That for ten years and more he had been the owner of a tract of land in St. Louis; bounded north by Chouteau Avenue, west by Armstrong Avenue, south by the proposed line of Hickory Street, and east by a line running about midway between Armstrong Avenue and Mississippi Avenue, and parallel thereto; said lot having a front on said proposed line of Hickory Street of 370 feet; that the eastern portion of said proposed Hickory Street, to wit, about 353 feet next to Mississippi Avenue, had been dedicated to public use theretofore by the owners of the land, and also, under certain considerations, a narrow strip, of half the necessary and proposed width of said street, laid off of plaintiff's above-described land, through to Armstrong Avenue, but that said street, as proposed, had not been declared through from said Mississippi Avenue to Armstrong Avenue; that the City Council, by ordinance 8190, approved January 29, 1873, established Hickory Street as a public highway, through from Mississippi to Armstrong Avenues, conforming in lines and width with that portion of 353 feet dedicated and the north line of said proposed street, conforming with the north lines of said narrow strip dedicated by plaintiff as aforesaid. Said ordinance further authorized and directed the land commissioner to cause Hickory Street to be opened according to law, but that Hickory Street had never been opened between the said

two avenues; that, by ordinance 9097, July 10, 1874, the City Council ordered the grading and other improving of said Hickory Street for about 353 feet west of Mississippi Avenue, being that eastern portion thereof dedicated in its full width by the owners of the land; that, by ordinance 9295, January 18, 1875, the grade of that portion of said proposed portion of Hickory Street was fixed (at a point 250 feet west of Mississippi Avenue) at an elevation of eighty feet above the city directrix; that, being so ordered to cause said portion of said proposed street to be graded, paved, and otherwise improved, the city engineer contracted with Skrainka and Weiths to do such grading and other work, and they were about to commence the same; that heretofore the grade of said street, as indicated by former city engineers, was a straight line from the grade of Mississippi Avenue to Armstrong Avenue, which avenues intersect Hickory Street, and to the grade of which Hickory Street must conform, and so has plaintiff always understood and acted; that the surface of the land on Hickory Street is above the actual grade of the avenues, but much lower than the grade fixed by ordinance 9295; that to conform to this last grade will necessitate an embankment along the whole 353 feet; that for a long time said 353 feet and said strip off of plaintiff's land, within Hickory Street as proposed, from Mississippi to Armstrong Avenues, had been used as a public highway by the public and plaintiff, but that the new grade rendered plaintiff's land absolutely inaccessible, and the street impassable; that, by its Charter (art. 8, sec. 7), the Council was authorized to order the improvement of streets and highways, but was forbidden to order such improvement of streets or highways not dedicated or opened according to law; that, therefore, such grading, etc., were wholly unauthorized and forbidden by the Charter; that said 353 feet of Hickory Street is without outlet, is no thoroughfare, is not opened, does not constitute a street, alley, or public highway; that the pro-

posed work threatens great loss to plaintiff; that all these facts have been laid before the Council by a memorial, but were not considered by that body before its late adjournment; that, before its next meeting, the mischief will be done, unless arrested by injunction, and will inflict on plaintiff damage for which no adequate compensation can be made; wherefore he prayed an injunction, etc.

Thereupon one of the judges of the Circuit Court, on August 14, 1875, granted a restraining order; and, on October 4, 1875, a motion to set this order aside was made, for the reasons, substantially, that the petition showed no cause for it. On the same day the city and the other defendants demurred to the petition, (1) because it did not state facts sufficient to constitute a cause of action; (2) because, under the allegations of the petition, plaintiff was not entitled to the relief prayed for; (3) because it appeared that Hickory Street had been dedicated to public use as far as defendants intended to improve it; (4) because the city had authority to establish the grade of any street, as it is alleged that she had established the grade of Hickory Street; (5) because the city had power by ordinance to direct the improvement of any street, when dedicated to public use, and such dedication as to Hickory Street was admitted; (6) because it did not appear that plaintiff's damages would be irreparable.

The court, on January 12, 1876, overruled the motion to dissolve, and, on January 24, 1876, overruled the demurrer. Defendants excepted to the overruling of the motion, and to the overruling of the demurrer, and declined to plead further; and, final judgment being thereupon given, they made a motion for a rehearing, and appealed to this court.

In behalf of the defendants it is urged (1) that the City Council is authorized to establish, open, widen, pave, or otherwise improve all streets, etc., by ordinance; (2) that Hickory Street was extended by ordinance; (3) that its having no outlet does not impair its claim to be called

a street; (4) that article 12, section 1, confers power on the Council to change the grade of streets, etc., and makes provision for compensation only where permanent buildings have been erected; (5) that injunction will not be granted to restrain a change of grade.

The respondent insists that the petition shows a plain case of forbidden action on the part of the city; that it shows a resulting injury to the plaintiff for which he can have no compensation by action at law; and that, these things being admitted by the demurrer, the judgment of the Circuit Court should be affirmed.

1. It appears from what is stated that the city proposes to grade and pave Hickory Street for about half-way between Mississippi and Armstrong Avenues; that ordinance 9097 directs the grading, etc., of the eastern half of the length of the street between the two avenues; that this far the street is opened according to law, or dedicated, but that west of this middle point it is not opened according to law, or dedicated, although, more than a year previous to the passage of ordinance 9097, the City Council had, by ordinance, declared Hickory Street to be established between the two avenues; that, by a subsequent ordinance, numbered 9295, the grade of that part of Hickory Street nearest to Mississippi Avenue has been fixed at an elevation far above the level of the avenues, and above that of the rest of the street; that the doing of the work proposed by the city will render the street impassable and the plaintiff's land inaccessible; and that the mischief resulting from the proposed work has been shown to the Council by a memorial, numerously signed, but disregarded.

All the points made by the counsel for the city justify what is complained of, and none of them seek to deny or extenuate it, the demurrer admitting all the facts which are properly pleaded. We proceed to consider the several objections taken by the appellants to the action of the Circuit Court.

2. It is first said that the City Council is authorized by its Charter and amendments thereto " to establish, alter, open, widen, extend, pave, or otherwise improve, etc., all streets, etc.," and, for this view, page 363 of Session Acts of 1874 is quoted.

It is singular that counsel should quote this act, rather than the corresponding section of the Charter of 1870, to which it refers, and which it professes to amend, when, by comparison, it will be found that subdivision 5 of section 1 of the amending act of 1874 is a mere reproduction of the 5th subdivision of section 1 of article 3 of the Charter of 1870. That section was an enumeration, and therefore a limitation, of the powers of the mayor and City Council. In 1874 some amendments were thought expedient, and were adopted accordingly. For this purpose the whole section was recast, and covers fully three pages, as amended. But this particular subdivision remains precisely what it was in the Charter of 1870.

Going to that Charter, we find the powers of the City Council in respect of " the construction, reconstruction, and repairs of any street, alley, or public highway " within the city carefully noted, with the limitation " that no such improvement shall be ordered at the expense of the city, if such street, alley, wharf, or public highway is not dedicated, established, or opened according to law, " but " the owners of ground bordering on any private alley may be required, " etc., to abate nuisances there. Art. 8, sec. 7. It cannot be doubted that this limitation thus imposed on the powers of the Council remains unaffected by the reënactment in 1874 of the 5th subdivision of section 1 of article 3.

3. It is next said that Hickory Street was extended by ordinance duly passed, and that though it has no outlet it is no less a street, for which section 138 of Angell on Highways is cited.

The citation does not bear out the doctrine for which it is referred to. There possibly may be a highway where

there is no thoroughfare, but the suggestion of such a possibility has been made only when the road under consideration led to some point to which access was desirable, expedient, and useful. If the City Council should decree the grading, etc., of a street up to an impassable barrier, existing at a spot to which no one could naturally or reasonably wish to go, it would require much indulgence to enable any one to believe that the concoctors of such a scheme had in view the promotion of the public convenience.

It is a contradiction in terms to speak of an impassable public highway. We might as well speak of an uninhabitable dwelling-house, or an invisible illumination. But the petition in this case informs us that the street will be rendered impassable by what is called an improvement of it. It is not merely said that it will remain impassable when the work contemplated is done. We are told that the street as existing fulfills a public use, but that as contemplated it will stop short at a precipice between two avenues, and effectually prevent access to the property which is now reached by its means. What the petitioner shows is a negligent, if not perverse, abuse of power on the part of the Council, involving, of course, expenses more or less large, and leading to results, not only not beneficial, but positively hurtful. Such a street, leading westward from Mississippi Avenue halfway to Armstrong Avenue, and terminating in what would be a nuisance, cannot be called public, or capable of promoting any public use. In the significant language of Abbott, C. J., in the case of *Wood* v. *Veal*, 5 Barn. & Ald. 454, " the public at large cannot be in the *use* of it," and, therefore, it cannot be called a public street. In the case of *Bateman* v. *Bluck*, 14 Eng. Law & Eq. 69, the road led from a public street to a court, a place to which access by the public was desirable, which access was furnished to the public by the road in question. It is a strange misapprehension to suppose this case to decide that a road or street became public, and conclusively appropriate to pro-

mote the public convenience, in virtue of being so designated in a formal manner by a body having such powers as our City Council.   All that it decides is that there may be a public highway where there is no thoroughfare.   Whether there is such a public highway or not will depend on circumstances. If the road leads to, or terminates at, a beach, a ferry, or a dock, it may be a public highway, though it goes no further, though it there meets an obstacle to be overcome by changing the mode of conveyance.   In order to suit the present case, a road leading to an abyss, or an impassable quagmire, must be such as the City Council is at liberty to designate a public highway or street, to construct which it is at liberty to burden both the public at large and the owners of adjoining property.

4. There is no question here of the right of the City Council, in a proper case, to change the grade of a street, but the citation of *Goszler* v. *Georgetown*, 6 Wheat. 593, does not establish that an injunction may not issue to prevent a change of grade when the change is in violation of the charter of a municipality.   In that case an ordinance of Georgetown had decreed the immutability of a grade.   Chief Justice Marshall was of opinion that no *ordinance* could prevent the Council from passing a different one at a subsequent time ; that one *Legislature* could not bind its successor, though it might be possible for it to enter into a contract which its successor could not abrogate.   For this reason he affirmed  the decree of the Circuit Court refusing an injunction.   " We rather  think that the corporation cannot abridge its own legislative powers," is the cautious language of the concluding sentence of the opinion of the court.

5. The great superiority in point of fullness, adequacy, certainty, and economy of proceedings to restrain the commission of the injury over an action to recover damages for its infliction furnishes a decisive answer to the suggestion that the plaintiff had a remedy at law.

The judgment of the Circuit Court is affirmed.